UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

United States of America,                     **MEMORANDUM & ORDER**

   - against -                              No. 22-cr-12 (KAM)

Brandon Romano,

            Defendant.

------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Brandon Romano is serving a twenty-month prison sentence for possessing a gun as a felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 34, Judgment in Crim. Case ("Judgment").) Romano now moves *pro se* for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 40, Mot. for Reduction of Sentence ("Mot.").) For the reasons stated below, the Court respectfully denies Romano's motion.[1]

**BACKGROUND**

**I.   Factual Background**

    On March 28, 2021, Romano drove his car off the road and

---

[1] Romano also moves the Court to appoint counsel to assist him in pursuing his motion for compassionate release. (*See* ECF No. 39, Mot. for Appointment of Counsel.) A defendant has no right to assistance of counsel in filing a motion for compassionate release. *United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021). Rather, the court has discretion to appoint counsel when the defendant shows the motion may have merit. *United States v. Acosta-Martinez*, No. 15-cr-87 (JFB), 2023 WL 3628589, at *1 n.1 (E.D.N.Y. May 24, 2023). Because the Court concludes that the issues presented in Romano's motion for compassionate release are not legally complex and his arguments lack merit, the Court exercises its discretion to deny Romano's motion to appoint counsel as well.

onto the corner of a sidewalk in Kings County, New York.  (ECF No. 17, Presentence Investigation Rep. ("PSR") ¶ 5.)  Responding officers from the New York City Police Department determined that he had been driving while intoxicated and arrested him. (*Id.*)  During a search of his vehicle, the officers recovered a loaded pistol with a defaced serial number in the glove compartment of Romano's car.  (*Id.*)  The pistol was manufactured outside the State of New York.  (ECF No. 36, Sentencing Hr'g Tr. 8:24-9:1.)

At the time of that incident, Romano had been convicted in New York state court of three gun-related felonies.  (PSR ¶¶ 21-23.)  During one offense, Romano shot his intended victim and an innocent bystander.  (*Id.* ¶ 23.)  Each offense was classified as a "felony" under New York law and punishable by a term of imprisonment greater than two years.  *See* N.Y. Penal Law §§ 70, 110, 120.10, 265.02.  Romano admitted that when he was arrested on March 28, 2021, he knew that he possessed – and that he was not allowed to possess – a gun due to his criminal record. (Sentencing Hr'g Tr. 8:20-24.)

## II.  Procedural Background

A grand jury indicted Romano for possessing a gun as a felon in violation of 18 U.S.C. § 922(g)(1) and for possessing a gun with a defaced serial number in violation of 18 U.S.C. § 922(k).  (ECF No. 1, Indictment.)  Romano initially pleaded

not guilty and was released on bail.  (ECF No. 6, Minute Entry
for Crim. Proceeding.)  He later entered into a plea agreement
in which he agreed to plead guilty to the § 922(g)(1) charge in
exchange for the Government dismissing the § 922(k) charge.
(ECF No. 16, Crim. Cause for Pleading; Sentencing Hr'g Tr. 3:13-
16, 35:9-11.)

       At Romano's sentencing, the Court calculated the advisory
guidelines sentence range as twenty-four to thirty months of
imprisonment.  (Sentencing Hr'g Tr. 20:24-21:2.)  After
considering the sentencing factors set forth in 18 U.S.C.
§ 3553(a), however, the Court determined that a below-guidelines
sentence was appropriate.  The Court found Romano's offense –
possessing a loaded gun in his glove compartment while driving
drunk – "very serious."  (*Id.* 26:4-6.)  Further, the fact that
the gun's serial number was defaced suggested Romano obtained
the gun illegally.  (*Id.* 26:7-9.)  The Court also found it
"troubling" that Romano's prior terms of imprisonment did not
deter him from committing gun-related crimes.  (*Id.* 26:13-18.)
Finally, the Court noted that Romano had been arrested for
driving drunk while on pre-trial supervision for the instant
offense and was charged with several related offenses in New
York state court.  (*Id.* 28:23-29:2.)  On the other hand, the
Court noted, Romano had been working in law-abiding occupations,
was a hard-working person beloved by his family and respected by

3

his friends, and was assisting with the care of his ailing
father.  (*Id.* 31:16–25.)  The Court sentenced Romano to a
twenty-month term of imprisonment followed by a two-year term of
supervised release.  (Judgment 2–3.)

Romano surrendered to the United States Marshal on June 13,
2023.  (Judgment 2.)  He is currently incarcerated at FCI Fort
Dix and due to be released on November 12, 2024. *See*
https://www.bop.gov/inmateloc.  On November 21, 2023, Romano
filed the instant motion for compassionate release, attaching a
request for a reduction of his sentence that purports to have
been submitted to FCI Fort Dix's warden on October 7, 2023.
(Mot. Ex. A.)  The Government opposes Romano's motion.  (*See* ECF
No. 41, Ltr. from Joy Lurinsky ("Opp'n").)

## LEGAL STANDARD

The federal compassionate release statute, 18 U.S.C.
§ 3582(c)(1)(A), creates an exception to the general rule that a
federal district court may not modify a term of imprisonment
after it has been imposed.  To be eligible for compassionate
release, the defendant must (1) exhaust his or her
administrative remedies by requesting compassionate release from
the prison authorities, (2) show "extraordinary and compelling
reasons" for a sentence reduction, and (3) show that the
reduction accords with the sentencing factors set forth in
18 U.S.C. § 3553(a).  *United States v. Keitt*, 21 F.4th 67, 71

4

(2d Cir. 2021).

## DISCUSSION

Romano seeks compassionate release due to his father's upcoming radiation treatment for his prostate cancer.  (*See* Mot. 3-4.)  Though the Court accounted for that diagnosis in determining Romano's sentence, (Sentencing Hr'g Tr. 27:6-8), Romano relies on a policy statement recently added to the federal Sentencing Guidelines providing that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" can be an extraordinary and compelling reason that justifies compassionate release, *see* U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2023) ("U.S.S.G.") § 1B1.13(b)(3)(B).

## I.   Exhaustion

A defendant may move for compassionate release after the earlier of (1) exhausting all administrative rights to appeal a failure by the Bureau of Prisons to file a motion on the defendant's behalf or (2) the lapse of thirty days from the receipt of any such request by the warden.  18 U.S.C. § 3582(c)(1)(A).  This exhaustion requirement is a case processing rule, not a jurisdictional limitation.  *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).  Thus, the government's proper invocation of a defendant's failure to comply with the requirement leaves the court without discretion

5

to excuse that failure for equitable reasons, *United States v. Golfo*, No. 19-cr-95 (KAM), 2022 WL 6162424, at *1 (E.D.N.Y. Oct. 6, 2022), but the government's decision not to raise an exhaustion defense permits the court to consider the merits of the defendant's motion, *United States v. Beckett*, No. 20-cr-213 (KAM), 2022 WL 2819075, at *3 (E.D.N.Y. July 19, 2022).

It is unclear that Romano satisfied the exhaustion requirement.  He attaches what purports to be a written request to FCI Fort Dix's warden to move for a sentence reduction submitted "via prison mailbox" on October 7, 2023, (*see* Mot. 27–28), and states that "more than 30 days have elapsed since the submission of that request," (*id.* 3).  Romano's statement does not come in the form of sworn testimony, however, nor does it provide any insight into whether the warden ever responded to Romano's request or the extent to which Romano completed the administrative appeals process at FCI Fort Dix.  In cases where the warden responds to the defendant's request, district courts in this circuit are divided as to whether the defendant must then complete the administrative appeals process or simply wait thirty days.  *Saladino*, 7 F.4th at 123–24.

The Court need not address these ambiguities because the Government does not raise an exhaustion defense in its opposition to Romano's motion.  Rather, it acknowledges that Romano "attached to his motion a request for compassionate

release made to the warden of Fort Dix submitted 30 days before
he filed his motion," (*see* Opp'n 2 n.1), without opining one way
or the other as to whether Romano actually exhausted his
administrative remedies.  The Government directs its opposition
entirely at the other two prerequisites for compassionate
release.  (*Id.* 2–4.)  Thus, the Court "is now free to consider
the merits of [Romano's] motion."  *Beckett*, 2022 WL 2819075, at
\*3 (quoting *Saladino*, 7 F.4th at 123).

## II.  Extraordinary and Compelling Reasons

The relevant new policy statement added to the Sentencing
Guidelines lists "[t]he incapacitation of the defendant's patent
when the defendant would be the only available caregiver for the
parent" among the circumstances creating extraordinary and
compelling reasons that justify compassionate release.  *See*
U.S.S.G. § 1B1.13(b)(3)(C).

Romano suggests that his father's upcoming radiation
therapy treatment may leave him in a weakened state.  (Mot. 6–
8.)  Romano states that his mother, siblings, and nephew are
unable to effectively care for his father and that it is
infeasible for Romano's parents to move in with someone else
given that they derive their income from the rental property
where they currently live.  (*Id.* 8–10.)  Romano further states
that it would be prohibitively expensive for his parents to hire
a property management company or a home healthcare agency.  (*Id.*

10–12.)  Alternatively, Romano argues that he is the only available "economic" caregiver for his father because he is the only person who will be able to maintain his parents' rental property after his father undergoes radiation therapy.  (*Id.* 12–14.)

The Court sympathizes with Romano's family circumstances but finds that he has not met his burden to show that his father is incapacitated.  Though Romano cites several internet sources explaining the possible effects of radiation therapy on patients generally, (*see* Mot. 6–8), he does not provide any of his father's medical records or a medical note from a treating physician to establish his incapacitation.  The Court will not go so far as to credit the Government's suggestion based on its own internet research that radiation therapy "would not render [Romano's] father wholly incapable of self care," (*see* Opp'n 3); however, Romano has the evidentiary burden, *see Beckett*, 2022 WL 2819075, at *2, and his failure to attach any medical evidence or opinions (or similarly competent evidence) leaves the Court unable to make the necessary factual findings, *see, e.g.*, *United States v. Yarbrough*, No. 06-cr-203 (MRH), 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023); *United States v. Nishida*, No. 19-cr-25 (SOM), 2023 WL 7222875, at *2 (D. Haw. Nov. 2, 2023).

For similar reasons, Romano has not met his burden to show that he is the only available caregiver for his father.  Romano

8

acknowledges that his parents live together.  (Mot. 8–12.)  He argues that his mother lacks the physical strength to adequately care for his father due to her age, her small stature, and the fact she is a cancer survivor herself.  (Mot. 8.)  Without medical evidence regarding the extent of Romano's father's incapacitation and medical evidence detailing Romano's mother's inability to provide his father the necessary assistance, the Court cannot conclude that she would be an inadequate caregiver.  Further, it is not clear from the record that no other person can provide the necessary care.  Romano does not explain "whether household members, friends in the community, or relatives other than his siblings," mother, and nephew "would have the time, money, and resources to help" his father.  *See Nishida*, 2023 WL 7222875, at *3.

The Court declines to address Romano's "economic caregiver" argument, (*see* Mot. 12–14), because Romano offered no case law to support it, the Government did not respond to it, and such analysis would be superfluous given that the Court has found that Romano failed to establish his father's incapacitation.  Moreover, as explained below, the Court finds that the sentencing factors in 18 U.S.C. § 3553(a) weigh against granting relief.  The Court is certainly sympathetic to Romano's family circumstances, but the record in this case does not establish the extraordinary and compelling reasons necessary for

compassionate release.

III. **Sentencing Factors**

Notwithstanding the absence of extraordinary and compelling reasons, the Court finds that the sentencing factors in 18 U.S.C. § 3553(a) do not favor relief. *See United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A)."). Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and otherwise accomplish the aims of the criminal justice system; (3) the kinds of sentences available; (4) the advisory guidelines sentence range; (5) pertinent policy statements by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants, and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

Romano acknowledges the seriousness of his offense but stresses his commitment to rehabilitation, citing his record while in custody and his completion of drug education and non-residential drug abuse programs. (*Id.* 15.) He also notes his promising reentry plan. Specifically, he has a standing job

10

offer from a hospital housekeeping department and intends to continue studying commercial electrical installation with the hope of eventually becoming a professional electrician. (*Id.* 17.) In opposition, the Government highlights the Court's discussion at Romano's sentencing regarding the seriousness of his offense and criminal history and the fact Romano has only served six months of a twenty-month sentence. (Opp'n 4.)

The Court finds that the relevant factors weigh against reducing Romano's sentence. Romano's twenty-month prison sentence falls below the low end of the advisory guidelines range, (*see* Sentencing Hr'g Tr. 20:24–21:2.), and the Court already accounted for Romano's family circumstances in determining that sentence, (*see id.* 27:4–8.; PSR ¶ 31 (apprising the Court of Romano's parents' medical circumstances before Romano's sentencing)). Further, as much as the Court sympathizes with Romano, it must remain mindful of the seriousness of his offense and his criminal history regarding illegal firearms.[2] In particular, the Court reiterates its concern that Romano's prior terms of imprisonment for committing gun-related crimes – one that involved shooting an innocent

---

[2] The Court questions Romano's representation that he "went to prison because of his alcoholism," (*see* Mot. 17), and considers that statement to be an attempt to minimize the gravity of his conduct. Romano may have been *caught* with the gun because he was driving under the influence, but it was illegal for him to *possess* the gun in the first place. Though the Court agrees with Romano that he could hardly be described as a "rampant career criminal terrorizing his neighbors," (*see id.*), his offense remains "very serious," (*see* Sentencing Hr'g Tr. 26:1–3).

bystander – did not deter him committing another one in the instant case.  (*See* Sentencing Hr'g Tr. 26:10-18.)  Early release would undermine the deterrent effect that was key to Romano's sentence.  *See United States v. Ferranti*, No. 95-cr-119 (RPK), 2022 WL 6777583, at *4 (E.D.N.Y. Oct. 11, 2022). Moreover, the protection of the public from further offenses is a factor in the Court's consideration.  *See* 18 U.S.C. § 3553(a)(2)(C).  Finally, as the Government points out, (*see* Opp'n 4), Romano has served less than thirty percent of an already below-guidelines sentence.  A further reduced sentence would not reflect the seriousness of Romano's offense, promote respect for the law, or provide adequate deterrence to Romano or the public generally.  *See Beckett*, 2022 WL 2819075, at *4.

The Court is highly encouraged by Romano's representations that he has completed drug education programs while incarcerated and that he has a promising reentry plan that includes a standing job offer.  (*See* Mot. 15-17.)  Moreover, the Court appreciates that his submission reflects thoughtful, clear writing.  As discussed above, however, the Court finds that full consideration of the § 3553(a) factors warrants denial of Romano's motion.

## **CONCLUSION**

For the reasons stated above, the Court respectfully denies Romano's motion for compassionate release and motion to appoint

counsel.

The Clerk of Court is respectfully requested to serve a copy of this Memorandum and Order on Romano and note service on the docket by December 20, 2023.


**SO ORDERED.**

Dated:      December 19, 2023
            Brooklyn, New York

                                    _____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York